UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------- x

| | | |
|---|---|---|
| HACHETTE BOOK GROUP, INC., PENGUIN RANDOM HOUSE LLC, and ROBERT MAZUR, | : : : | 22 Civ. 1:22-cv-5730 |
| Plaintiffs, | : : | ECF Case |
| -against- | : : | **COMPLAINT** |
| UNITED STATES DRUG ENFORCEMENT ADMINISTRATION and UNITED STATES DEPARTMENT OF STATE, | : : : : | TRIAL BY JURY DEMANDED |
| Defendants. | : | |

------------------------------------- x

Plaintiffs Robert Mazur, Penguin Random House LLC, and Hachette Book Group, Inc. (collectively, "Plaintiffs"), by their undersigned attorneys, allege as follows:

## NATURE OF THE ACTION

1.  Plaintiffs bring this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, *et seq.*, to enjoin the U.S. Drug Enforcement Administration ("DEA"), a branch of the U.S. Department of Justice, from failing to respond to a request sent by Plaintiffs to the DEA almost a year ago, on July 9, 2021, and directing the office to promptly disclose any records responsive to the request.

2.  Plaintiffs also seek to enjoin the U.S. Department of State ("DOS"), an executive department of the U.S. federal government, from failing to respond to an appeal of DOS' determination of a July 9, 2021 FOIA request, and directing the office to promptly disclose any records responsive to the Appeal.[1]

---

[1] Hereinafter, Plaintiffs will refer to the two FOIA requests to the DEA and DOS collectively as "the Requests," and separately as "the DEA Request" and "the DOS Request."

3. Although the DEA acknowledged receipt of the DEA Request on July 14, 2021; to date, the DEA has failed to issue a determination on the DEA Request or further respond to it in any manner.

4. Likewise, while the DOS produced some documents in response to the DOS Request on August 19, 2021 (hereinafter, the "Response"), Plaintiffs appealed the Response on November 16, 2021 for improperly withholding certain documents from the production (hereinafter, the "Appeal"). DOS acknowledged receipt of the Appeal on that same day, but they did not further respond to the Appeal.

5. When Plaintiffs followed up with the DOS FOIA office regarding the Appeal, they were informed that the Appeal has a ***September 2022*** estimated date of completion. The DOS did not provide any information regarding why the processing of the Appeal would require approximately ten months.

6. The FOIA requires a government agency to respond to a party making a FOIA request within 20 working days, notifying that party of at least the agency's determination of which of the requested records it will release, which it will withhold and why, and the requester's right to appeal the determination to the agency head. *See* 5 U.S.C. § 552(a)(6)(A)(i). The FOIA similarly requires a government agency to make a determination with respect to any appeal within 20 working days after the receipt of such appeal. *See id*. § 552(a)(6)(A)(ii).

7. In the event of "unusual circumstances," a government agency may take up to 30 working days to respond to a FOIA request or appeal. *Id.* § 552(a)(6)(B)(i). The agency must set forth "the unusual circumstances for such extension . . . ." *Id.*

8. If the agency fails to issue its determination on a request or appeal within this required time period, the requester may bring suit directly in federal district court without exhausting

administrative appeal remedies. *See Citizens for Responsibility & Ethics in Washington v. Fed. Election Comm'n*, 711 F.3d 180, 182-83 (D.C. Cir. 2013).

9. Plaintiffs, two book publishing companies and an author, published a book regarding the author's laudable years of public service as an undercover government agent infiltrating the criminal enterprises of Pablo Escobar's narco-trafficking circles. Plaintiffs were wrongfully sued in Florida state court for alleged defamation based on statements made in the book, and submitted the Request to seek certain documents that will vindicate their legal defenses in court.

10. The FOIA "requires government agencies to make public virtually all information that is not specifically exempted from disclosure under the Act." *North v. Walsh*, 881 F.2d 1088, 1093–94 (D.C. Cir. 1989). "[D]isclosure, not secrecy, is the dominant objective" of FOIA. *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001) (internal quotation marks and citations omitted). Indeed, "a FOIA requestor's rights are neither 'diminished' nor 'enhanced' in light of a 'particular, litigation-generated need for [the requested] materials' . . . ." *Chiquita Brands Int'l Inc. v. S.E.C.*, 805 F.3d 289, 294 (D.C. Cir. 2015) (citing *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 n. 23 (1978)); *see also North*, 881 F.2d at 1099 ("[A]n individual may . . . obtain under FOIA information that may be useful in non-FOIA litigation, even when the documents sought could not be obtained through discovery.").

11. Additionally, the public interest favors the disclosure that Plaintiffs seek, as it will confirm the accuracy of the statements in Plaintiffs' book and thereby clarify for the public important facts regarding one of the most infamous narco-trafficking enterprises of modern times, as well as U.S. agencies' investigation of that enterprise. *See Nation Mag., Washington Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 895 (D.C. Cir. 1995) (finding a public interest in records pertaining to federal authorities' drug interdiction efforts); *Bennett v. Drug Enf't Admin.*, 55 F.

Supp. 2d 36, 42 (D.D.C. 1999) (substantial public interest warranted disclosure by DEA of informant's criminal records in part because FOIA requester produced evidence that informant had frequently perjured himself about his criminal record).

12. Accordingly, because Plaintiffs submitted the DEA Request on July 9, 2021, the DEA was required to issue a determination on the Request by August 6, 2021—or at the latest by August 20, 2021, in the event of unusual circumstances. In failing to do so, the DEA has violated the FOIA, and Plaintiffs have standing to sue to vindicate their right to receive a timely determination on the DEA Request.

13. Likewise, because Plaintiffs submitted the Appeal on November 16, 2021, the DOS was required to issue a determination on the Appeal by December 16, 2021—or at the latest by January 3, 2022, in the event of unusual circumstances. In failing to do so, the DOS has violated the FOIA, and Plaintiffs have standing to sue to vindicate their right to receive a timely determination on the Appeal.

## JURISDICTION AND VENUE

14. This Court has both subject matter jurisdiction over this action and personal jurisdiction over the parties pursuant to 5 U.S.C. §§ 552(a)(4)(B). This Court also has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 2201(a) and 2202. Venue lies in this district under 5 U.S.C. § 552(a)(4)(B).

## THE PARTIES

15. Plaintiff Penguin Random House LLC ("Penguin Random House") is a book publishing company, organized under the laws of Delaware, with its principal place of business at 1745 Broadway, New York, New York 10019. It houses over 300 highly-regarded publishing imprints and publishes 70,000 digital and 15,000 print titles annually, with more than 100,000 eBooks available

worldwide—many of which have won awards and received wide acclaim. Penguin Random House is dedicated to the belief that books, and the stories and ideas they hold, have the unique capacity to connect and change the public, and carry us toward a better future for generations to come.

16. Plaintiff Hachette Book Group, Inc. ("Hachette") is a book publishing company, organized under the laws of Delaware, with its principal place of business at 1290 Sixth Avenue, New York, New York 10104. Hachette is made up of dozens of esteemed imprints within a variety of publishing groups. Hachette books and authors have received the Pulitzer Prize, National Book Award, Caldecott Medal, Newbery Medal, Booker Prize, Nobel Peace Prize and other major honors. Annually, Hachette publishes approximately 2,100+ adult books, 500 books for young readers, and 750 audiobook titles. In 2021, the company had 204 books on the *New York Times* bestseller list, 30 of which reached #1.

17. Plaintiff Robert Mazur is an American citizen who has dedicated his life to public service, spending nearly three decades working as a special agent for the U.S. Customs Service, IRS Criminal Investigations Division, and Drug Enforcement Administration. He is also the author of two books—including one New York Times bestseller—each of which detail long-term undercover infiltrations he executed within separate criminal organizations. Mr. Mazur is considered one of the world's leading experts in exposing criminal financial operations. Mr. Mazur is a current resident of the state of Florida.[2]

---

[2] The US Customs Service—Office of Enforcement (now the Homeland Security Investigations Division of Immigration & Customs Enforcement) expended tens of thousands of dollars to establish security measures to protect Mr. Mazur and his family and keep their current residence confidential. Thereafter, the DEA continued to recognize the importance of continuing to maintain these security measures, and they were kept in place. These security-related steps were initially taken after testimony of witnesses and a foreign intercept of telephone conversations by members of the Medellin Cartel were obtained by two law enforcement agencies confirming that a $1/2

18. Defendant the U.S. Drug Enforcement Administration is a division of the U.S. Department of Justice, tasked with combating drug trafficking and distribution within the U.S. Upon information and belief, the DEA has possession and control of the records sought by the DEA Request. The service address for the DEA is in Springfield, Virginia.

19. Defendant the U.S. Department of State is an executive department of the U.S. federal government, responsible for the nation's foreign policy and international relations. Upon information and belief, the DOS has possession and control of the records sought by the DOS Request and Appeal. The service address for the DOS is in Washington, D.C.

## STATUTORY BACKGROUND

20. The FOIA, 5 U.S.C. § 552, requires agencies of the federal government to release requested records to the public unless one or more specific statutory exemptions apply.

21. An agency must respond to a party making a FOIA request within 20 working days, notifying that party of at least the agency's determination of which of the requested records it will release, which it will withhold and why, and the requester's right to appeal the determination to the agency head. 5 U.S.C. § 552(a)(6)(A)(i). The FOIA similarly requires a government agency to make a determination with respect to any appeal within 20 working days after the receipt of such appeal. *See id*. § 552(a)(6)(A)(ii).

---

million contract was issued for the assassination of Mr. Mazur. The individual tied to the issuance of this death contract, Gerardo Moncada, was the principle partner of Pablo Escobar at the time these threats were uncovered. The brother of the plaintiff in the underlying Florida case related to the relevant FOIA requests, Rodolfo Ospina Baraya, was the self-proclaimed right-hand man of Mr. Moncada at the time that Mr. Moncada and others issued the contract on Mr. Mazur's life. Given the security concerns at risk, Plaintiffs have not included Mr. Mazur's full address in this filing; and request that the Court find the inclusion of his current state of residence as sufficient. Mr. Mazur can, at all times, be expeditiously contacted and respond to requests in this matter through counsel.

22. In the event of "unusual circumstances," a government agency may take up to 30 working days to respond to a FOIA request or appeal. *Id.* § 552(a)(6)(B)(i). The agency must set forth "the unusual circumstances for such extension . . . ." *Id.*

## FACTUAL BACKGROUND

**A. Plaintiffs Publish a Book Based on Mr. Mazur's Experience Working Undercover as a Government Agent.**

23. During his time working as a special agent for the U.S. Customs Service, Mr. Mazur was part of an investigation aimed at exposing Pablo Escobar and Manuel Noriega's Colombian drug cartel. Mr. Mazur spent years working undercover as purported mob-connected money launderer "Robert Musella" to infiltrate and expose Pablo Escobar's drug cartel operations, and those of other international drug criminals like Manuel Noriega, in what became known as one of the most consequential drug enforcement takedowns in this nation's history, "Operation C-Chase."[3]

24. In that role, Mr. Mazur also exposed how cartel drug money was laundered through major international banks such as the Bank of Credit and Commerce International ("BCCI"). Operation C-Chase was highly publicized as one of the most successful undercover operations in U.S. law enforcement history, leading to the indictments of 85 individuals, including several officials affiliated with BCCI (which, at the time, was the seventh largest privately-held bank in the world).

25. Mr. Mazur, under death threats, risked his life and that of his family, to bring about the end of the cartel's money laundering operation.

---

[3] The Eleventh Circuit's opinion in *United States v. Awan*, 966 F.2d 1415, 1417-22 (11th Cir. 1992) summarizes Mr. Mazur's undercover activities during Operation C-Chase building a criminal case against the banking institutions who laundered cartel drug proceeds.

26. After retiring, Mr. Mazur authored a book detailing his involvement in Operation C-Chase, titled *"The Infiltrator — My Secret Life Inside the Dirty Banks Behind Pablo Escobar's Medellin Cartel"* (hereinafter, the "Book"). The Book was originally published in 2009 by Hachette. It was later republished in 2015 as an audiobook by Penguin Random House, and in 2016 in a paperback edition by Hachette.

27. In the Book, Mr. Mazur describes, among other things, his interactions with an individual named Francisco Javier Ospina Baraya (hereinafter, "Mr. Baraya")—the grandson of Colombia's former President, Mariano Ospina Perez.[4]  The Book describes Mr. Baraya's association with the Medellin Cartel.

28. Despite Mr. Baraya's claims to the contrary, his associations—and those of some of his family members—with the Medellin Cartel are supported by Mr. Mazur's own investigations, publicly available documents including court records from the Operation C-Chase cases, and records that Plaintiffs believe are currently held by the DEA and DOS.

**B. Mr. Baraya Sued Plaintiffs in Florida State Court.**

29. On September 14, 2016, Mr. Baraya sued Plaintiffs in Florida state court in the following action: *Baraya v. Mazur, et al.,* Case No. 16-006002-CI (Fla. Cir. Ct. 2016, Pinellas Cnty.) (hereinafter, the "Florida Action"). In the Florida Action, Mr. Baraya claims that Plaintiffs defamed him in the Book—mostly by describing his connections to the Medellin Cartel, which Mr. Baraya disputes.

---

[4] The 2009 Book referred to Mr. Baraya as "Javier Ospina" and "Javier Ospina Baraya." When Mr. Baraya's counsel contacted Plaintiffs seven years after the publication of the Book, Plaintiffs agreed to remove mention of the "Baraya" name and the limited references of the Baraya family lineage. As explained to Mr. Baraya's counsel, these edits were not an acknowledgment of the validity of Mr. Baraya's claims that certain information about him in the Book was false, but were made solely as an accommodation to avoid further dispute.

30. Discovery commenced in the Florida Action in the summer of 2020. Fact discovery is set to close on August 1, 2022, although the parties are in negotiations to extend fact discovery through the fall of 2022, given some pending discovery motions.

31. At the summary judgment phase of the Florida Action, Plaintiffs intend to argue that Mr. Baraya cannot satisfy his burden of proving that the statements made about him in the Book are false. Accordingly, as part of the discovery process, Plaintiffs seek documents and information that will confirm Mr. Baraya's connection to and work for the Medellin Cartel.

### C. Plaintiffs Submit the Request for Records Held by the DEA to Support Their Defense in the Florida Action; and the DEA Fails to Respond to Plaintiffs' Request.

32. On July 9, 2021, Plaintiffs submitted their Request to the DEA. Attached as **Exhibit A** is a true and correct copy of the DEA Request.

33. Plaintiffs included with the DEA Request a copy of DOJ Form 361 signed by Mr. Baraya, in which he authorized the release of information relating to him.

34. The DEA Request states that the DEA obtained certain bank records in late 1989 or early 1990 from Panamanian officials concerning four accounts maintained on behalf of members of the Medellin drug cartel at two financial institutions operated in Panama, Banco de Occidente (Panama) and Banco de Occidente International Limited. The DEA Request identifies the account numbers and describes how the DEA obtained these records and some of the agents involved in that process.

35. The DEA Request then states that an analysis of these bank records revealed the laundering of roughly $1 billion in drug proceeds on behalf of Pablo Escobar, Gerardo Moncada, Fernando Galeano, and other high-ranking members of the Medellin Cartel. The analysis also revealed that transfers of drug proceeds were made from those four accounts to various bank accounts in Spain—some of which Spanish authorities confirmed were controlled by Mr. Baraya.

36. The DEA Request further states that the documentation confirming transfers of drug proceeds from the four accounts in question to accounts controlled by Mr. Baraya resulted in an initial denial of his request for a Visa made during and before January 1993. This initial Visa denial was issued after consultation between various U.S. Embassy personnel in Madrid, including DEA, and Spanish authorities.

37. Accordingly, the DEA Request seeks the following documents from the DEA:

- Any and all forms DEA-6, reports, schedules, memoranda, cables, analysis, copies of bank records, or other records related to the transfer of funds from the above-referenced accounts, or any other accounts alleged to contain drug proceeds, to accounts maintained by or on behalf of Francisco Javier Ospina Baraya (or any of his aliases). These records should include, but not be limited to, transfers from the four above-referenced accounts maintained at Banco de Occidente during the period of January 1, 1987 through December 31, 1989.

- Any forms DEA-6 related to the joint U.S. Customs / DEA investigation conducted by the DEA Tampa District Office that reference Francisco Javier Ospina Baraya (a/k/a Javier Ospina).

38. The DEA Request also provided additional helpful information regarding locations where the documents might be archived, based on Mr. Mazur's investigation.

39. Finally, the DEA Request noted that "release of the information sought is unlikely to result in any foreseeable harm because the relevant events occurred between 20-40 years ago." Indeed, the criminal court proceedings arising from Operation C-Chase are long since concluded.

40. By email dated July 14, 2021, the DEA acknowledged that it received the DEA Request, and assigned it DEA FOIA/PA Case Number: 21-00384-P. The email was signed by Ms. Aneris Kent, a FOIA/PA Specialist at the Intake Unit of the FOIA/PA Section of the DEA. Attached as **Exhibit B** is a true and correct copy of the DEA's email.

41. On January 4, 2022, Plaintiffs submitted an Addendum to the DEA Request. Attached hereto as **Exhibit C** is a true and correct copy of this Addendum and the cover email that

accompanied it.  The Addendum provided some additional information that might assist the DEA in its search for records responsive to the DEA Request and provided some additional proposed search terms based on information learned through discovery in the Florida Action.

42. Plaintiffs sent this Addendum to both Ms. Kent and the DEA.FOIA@usdoj.gov email address.  In the cover email, Plaintiffs requested to have a brief call with Ms. Kent to discuss the DEA Request and asked for her availability.  Ms. Kent did not respond to this email.

43. On January 4, 2022, Plaintiffs received an automatic email from DEA.FOIA@usdoj.gov responding to their submission of the Addendum.  The email stated, "If you are submitting a FOIA request, this email serves as a courtesy reply."  Attached hereto as **Exhibit D** is a true and correct copy of this email.

44. On February 18, 2022, Plaintiffs sent another email to Ms. Kent following up on their January 4, 2022 email.  Attached hereto as **Exhibit E** is a true and correct copy of this email.

45. Plaintiffs received an automatic response from Ms. Kent's email account saying that she was "no longer with the DEA FOIA/PA Intake Sub-Unit" and advising the sender to "contact the FOIA Requester Service Center at (571) 776-2300 or DEA.FOIA@dea.gov."  Attached hereto as **Exhibit F** is a true and correct copy of this email.

46. On February 22, 2022, Plaintiffs emailed the DEA.FOIA@dea.gov account explaining the situation, re-attaching the Addendum, and requesting a response.  Attached hereto as **Exhibit G** is a true and correct copy of this email.  No one from the DEA ever responded to these email inquiries.

47. On March 3, 2022, Plaintiffs tried calling the DEA FOIA Customer Service phone number and left a message.  No one ever responded to this voice message.  Plaintiffs also tried

11

calling the DEA FOIA Public Liaison phone number provided in **Exhibit B**, but that number had been discontinued.

48. To date, the DEA has not issued a determination on the DEA Request. Because 30 working days have passed since Plaintiffs submitted the DEA Request, the DEA has violated the FOIA by failing to timely issue its determination.

### D. Plaintiffs Submit the Request for Records Held by the DOS to Support Their Defense in the Florida Action.

49. On July 9, 2021, Plaintiffs submitted their Request to the DOS. Attached as **Exhibit H** is a true and correct copy of the DOS Request.

50. Plaintiffs included with the DOS Request a copy of the DOS Certification of Identity Form (DS-4240) signed by Mr. Baraya, in which he authorized the release of information relating to him.

51. The DOS Request requested the following documents regarding Mr. Baraya: (1) U.S. Visa Applications (DS Forms 160) or their predecessor form equivalent; (2) Correspondence; (3) Memoranda; (4) Reports received from other agencies; and (5) photographs of Mr. Baraya.

52. The DOS Request also provided the background of the documents requested, similar to that provided in the DEA Request.

53. The DOS Request specified that, in seeking visa application documents, it was seeking any and all records related to the above-referenced visa application made during 1993, and any other prior or subsequent visa applications made by or on behalf of Mr. Baraya during the period of 1980 to 1999.

54. Finally, the DOS Request noted that "release of the information sought is unlikely to result in any foreseeable harm because the relevant events occurred between 20-40 years ago." Indeed, the criminal court proceedings arising from Operation C-Chase are long since concluded.

### E. The DOS Makes a Limited Production in Response to the Request, But Takes No Further Action After Plaintiffs Appeal the Response.

55. By email dated July 30, 2021, the DOS acknowledged that it received the DOS Request on July 23, 2021, and assigned it as Case Control Number: F-2021-08768. Attached as **Exhibit I** is a true and correct copy of the DOS' email.

56. On August 19, 2021, the DOS FOIA Office issued a response to the DOS Request (hereinafter, the "Response Letter," attached as **Exhibit J**) as well as a 16-page production (hereinafter, the "Production," attached as **Exhibit K**).

57. The Production included certain documents related to Mr. Baraya's application for a visa, as well as a May 4, 1999 letter that Mr. Baraya wrote to the American embassy, which references the fact that his visa had previously been denied. However, the Production did not include any records regarding the reasons for the denial of Mr. Baraya's visa in 1993—or even any correspondence sent to Mr. Baraya explaining the 1993 denial or correspondence sent from Mr. Baraya to DOS or Embassy staff appealing or otherwise challenging the denial.

58. The Response Letter stated that: "Any information about other visa records responsive to your request, including whether other records exist and, if so, the quantity of such records, is confidential under Section 222(f) and therefore exempt from release under Exemption 3 of the FOIA, 5 U.S.C. § 552(b)(3)."

59. On November 16, 2021, Plaintiffs appealed the Response Letter and Production (attached as **Exhibit L**). In the Appeal, Plaintiffs challenged DOS' withholding of any additional visa records on the basis of section 222(f) of the Immigration and Nationality Act—specifically visa records regarding the denial of Mr. Baraya's visa in 1993.

60. In particular, Plaintiffs noted that DOS policy and FOIA case law allows DOS to disclose certain visa-related records "to the person who provided the record to, or has already

13

received the record from, the Department of State." Accordingly, Plaintiffs argued that any records that had, at one time, been either sent from or provided to Mr. Baraya were wrongfully withheld. Plaintiffs noted that the Request had included a Certification of Identity waiver by Mr. Baraya, which authorized the release of documents regarding him.

61. Plaintiffs also argued in the Appeal that section 222(f) includes an exception for situations in which the visa documents sought are relevant and necessary to resolve an issue in a pending legal proceeding. Because the documents sought in the DOS Request are necessary to resolve a critical issue in a pending defamation litigation—whether Mr. Baraya engaged in drug-trafficking or money laundering—Plaintiffs argued that they qualified for the exception.

62. The DOS acknowledged receipt of the Appeal on the same day and assigned it tracking number A-2022-00054. Attached hereto as **Exhibit M** is a true and correct copy of this acknowledgement letter.

63. For months, Plaintiffs did not hear further from DOS regarding the status of the Appeal.

64. On June 3, 2022, Plaintiffs emailed the DOS FOIA Office to inquire as to the status of the Appeal. Attached hereto as **Exhibit N** is a true and correct copy of this correspondence. On June 6, 2022, DOS responded to Plaintiffs saying that: "the FOIA Requester Service Center contacted the Appeals Officer and was advised that this appeal is in process and has a September 2022 estimated date of completion (EDC). EDCs are estimates and subject to change. You will be notified of the results of this appeal as soon as that information becomes available."

65. DOS did not provide any explanation for why it needed approximately 10 months to respond to the Appeal, as opposed to the statutorily required 20-30 business days.

66. Because 30 business days have passed since Plaintiffs submitted the Appeal, the DOS has violated the FOIA by failing to timely issue its determination.

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
### (DEA:  Failure to Issue Determination on FOIA Request)

67. Plaintiffs repeat and re-allege paragraphs 1-66.

68. Plaintiffs properly submitted a FOIA request for documents from the DEA.

69. The DEA failed to issue a determination on Plaintiffs' DEA Request within the time required by the FOIA statute.

70. Plaintiffs have a statutory right to receive a timely determination on their Request from the DEA.

71. As a result of the actions complained of herein, Plaintiffs' access to government records that they are entitled to review has been improperly delayed, in violation of the FOIA.

72. Accordingly, Plaintiffs are entitled to injunctive and declaratory relief with respect to the immediate issuance of a determination on and processing of its DEA Request.

### SECOND CAUSE OF ACTION
### (DOS: Failure to Issue Determination on FOIA Appeal)

73. Plaintiffs repeat and re-allege paragraphs 1-66.

74. Plaintiffs properly submitted a FOIA request for documents from the DOS; and appealed the DOS's determination of that request.

75. The DOS failed to issue a determination on Plaintiffs' Appeal within the time required by the FOIA statute.

76. Plaintiffs have a statutory right to receive a timely determination on their Appeal from the DOS.

77. As a result of the actions complained of herein, Plaintiffs' access to government records that they are entitled to review has been improperly delayed, in violation of the FOIA.

78. Accordingly, Plaintiffs are entitled to injunctive and declaratory relief with respect to the immediate issuance of a determination on and processing of their Appeal.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court:

(1) Order the DEA to immediately and fully process Plaintiffs' July 9, 2021 FOIA request and disclose all non-exempt documents immediately to Plaintiffs;

(2) Order the DOS to immediately and fully process Plaintiffs' November 16, 2021 FOIA appeal and disclose all non-exempt documents immediately to Plaintiffs;

(3) Issue a declaration that Plaintiffs are entitled to immediate processing and disclosure of the requested records;

(4) Retain jurisdiction of this action to ensure no agency records are wrongfully withheld;

(5) Award Plaintiffs their costs and reasonable attorneys' fees in this action; and

(6) Grant such other relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs demand a jury trial on all issues so triable in this action.

Dated:  July 6, 2022
Washington, D.C.

                                        Respectfully submitted,

                                        */s/  Laura R. Handman*
                                        Laura R. Handman (S.D.N.Y. Bar No. LRH5353)
                                        Chelsea T. Kelly (S.D.N.Y. Bar No. CK2016)
                                        DAVIS WRIGHT TREMAINE LLP
                                        1251 6th Avenue, 21st Floor
                                        New York, New York 10020
                                        202-973-4224
                                        laurahandman@dwt.com
                                        chelseakelly@dwt.com

                                        *Counsel for Plaintiffs Penguin Random House LLC, Hachette Book Group, Inc., and Robert Mazur*